IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| NADINE MORRIS,[1] | § | |
| | § | No. 317, 2024 |
| Respondent Below, | § | |
| Appellant, | § | Court Below–Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File Nos. 24-01-06TN |
| DEPARTMENT OF SERVICES | § | 24-01-07TN |
| FOR CHILDREN, YOUTH AND | § | Petition Nos. 24-01087 |
| THEIR FAMILIES/DIVISION OF | § | 24-01091 |
| FAMILY SERVICES, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |
| | § | |
| In the Interest of: | § | |
| BENJAMIN MORRIS | § | |
| CAMERON BISHOP CLARK | § | |

Submitted: December 19, 2024
Decided:    March 4, 2025

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## **ORDER**

After consideration of the no-merit brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26.1(c), the appellee's response, the Children's Attorney's response, and the Family Court record, it appears to the Court that:

---

[1] The Court previously assigned pseudonyms to the appellant and her children under Supreme Court Rule 7(d).

(1) By order dated July 8, 2024, the Family Court terminated the parental rights of the appellant, Nadine Morris ("Mother"), in her sons Benjamin (born in September 2011) and Cameron (born in July 2019) (together, the "Boys" and, with their older brother, Jeremy, the "Children").[2] Mother appeals.

(2) On appeal, Mother's counsel has filed an opening brief and a motion to withdraw under Rule 26.1(c). Counsel asserts that he has conducted a conscientious review of the record and the relevant law and has determined that Mother's appeal is wholly without merit. Counsel informed Mother of the provisions of Rule 26.1(c), provided her with a copy of counsel's motion to withdraw and the accompanying brief, and advised her that she could submit in writing any additional points that she wished for the Court to consider. Mother has submitted points for the Court's consideration, which counsel included in his Rule 26.1(c) brief. The appellee, the Delaware Department of Services for Children, Youth and Their Families/Division of Family Services (DFS), and the Children's Attorney have responded to counsel's Rule 26.1(c) brief and argue that the Family Court's judgment should be affirmed.

(3) In June 2022, DFS was alerted that the Children were at risk of possible neglect because Mother was homeless and had untreated mental health diagnoses. A

---

[2] The Family Court's order also terminated the parental rights of the Boys' respective fathers. Benjamin's father has also appealed the Family Court order. *See Hill v. Dep't of Servs. for Children, Youth and Their Families*, Appeal No. 274, 2024. We refer only to facts in the record that relate to Mother's appeal.

safety plan was put in place under which a non-relative, would care for the Children. In September 2022, DFS held a team-decision-making meeting in which the alleged father of Jeremy and Benjamin and the alleged father of Cameron participated, but Mother did not. The alleged fathers, who resided in California, each stated his intention to come to Delaware and retrieve his respective child(ren), but neither did so. The Children continued to reside with the non-relative. In January 2023, the non-relative advised DFS that she was no longer willing to care for Cameron. DFS petitioned for emergency custody of the Children because DFS was unable to contact Mother, DFS had concerns about Mother's mental health given its prior involvement with Mother, and none of the Children had had any contact with his alleged father for a significant period of time. On January 5, 2023, the Family Court granted DFS's petition.

(4) With the filing of DFS's dependency-and-neglect petition, the mandated hearings ensued.[3] On January 11, 2023, the Family Court held a preliminary protective hearing. DFS had finally located and contacted Mother, who was staying at a hotel in Los Angeles, California. Mother, who was also the parent of two adult daughters, had prior experience with DFS in Delaware. Mother testified at the hearing in a manner that the Family Court characterized as "scattered," but the

_____

[3] When a child is removed from his home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and the court's rules. 13 *Del. C.* § 2514; Del. Fam. Ct. Civ. Proc. R. 212-219.

court was able to ascertain a general timeline of events. Mother recounted that she and Benjamin had moved to California approximately eight years earlier, and Jeremy joined them in 2014. In March 2022, maternal grandmother paid for Mother and the Children to return to Delaware. Mother then briefly relocated to Florida with the Children in the spring of 2022 before returning to Delaware in July 2022. In October 2022, Mother returned to California, leaving the Children behind in Delaware. Mother described her strained relationships with family members (including maternal grandmother, whom she accused of calling DFS "on" her, and Jeremy, whom she described as acting "nasty" toward her) and agreed that she had once received a bipolar diagnosis. Jeremy and Benjamin had no desire to live with Mother and were doing well in the non-relative's care. Cameron was in an appropriate foster home and was scheduled to be evaluated for autism. The Family Court found that DFS had made reasonable efforts to prevent the removal of the Children from the family home and that the Children were dependent in Mother's care because of Mother's lack of stable housing and income as well as DFS's concerns about her mental health.

(5) On March 8, 2023, the Family Court held an adjudicatory hearing. DFS had been unable to contact Mother, who was still in California, until the day before the hearing. One of Mother's cousins was interested in filing for guardianship of Jeremy. Cameron had been moved to a new foster home with fewer children and

4

was doing well. Benjamin, who remained in the non-relative's care, was likewise doing well. DFS believed that Mother had a history of domestic violence with Cameron's father. Mother testified that she was willing to return to Delaware and work with DFS. The Family Court found that the Children remained dependent in Mother's care: Mother was not in Delaware, and she needed to address areas of concern (substance abuse, mental health, and domestic violence) before the Children could safely be returned to her.

(6)     As of the April 3, 2023 dispositional hearing, Mother had returned to Delaware. The maternal cousin had petitioned for guardianship of Jeremy, and Mother supported the petition. The Family Court reviewed the case plan that DFS had developed to facilitate Mother's reunification with the Children. The case plan required that Mother: (i) undergo a mental health evaluation and follow any treatment recommendations, including medication management; (ii) undergo a substance abuse evaluation and follow any treatment recommendations; (iii) sign consents to allow DFS to communicate with her treatment providers; (iv) complete a parenting class and work with a family interventionist to implement effective parenting skills; (v) obtain and maintain stable employment; (vi) obtain and maintain stable housing; and (vii) work with DFS to address Cameron's special needs. DFS established a visitation schedule for Mother and Cameron; visits with Jeremy and Benjamin would be scheduled at their discretion because neither boy currently

wished to visit with Mother. The Family Court approved the case plan and entered it as an order of the court. Because Mother told the court that she objected to portions of the plan, the Family Court noted that she could raise any objections to the plan by motion within thirty days. Mother did not raise any objections to the plan.

(7) On June 12, 2023, the Family Court held a review hearing. After failing to appear for two previously scheduled appointments, Mother had met with DFS's designated mental health care provider, Rachel Brandenburg, Psy.D., on June 9 for a forensic psychological evaluation. In connection with her substance abuse evaluation with Brandywine Counseling & Community Services, Mother had been diagnosed as bipolar and recommended for treatment. Mother's housing situation remained unstable: she was either staying with friends or relatives or renting a hotel room. DFS had concerns about Mother's conduct during her visits with Cameron: during one visit at the public library, Mother had to be redirected after she began talking to strangers about her DFS case; and Mother frequently removed Cameron from activities that he was enjoying. Mother told the court that she was about to receive a large sum of money from a pending lawsuit (or lawsuits) in California. The Children were doing well: the maternal cousin had been awarded guardianship of Jeremy; and Benjamin, who continued to have no interest in visiting with Mother, was about to be placed with Cameron's foster family. At the conclusion of the hearing, the Family Court found that the Boys remained dependent in Mother's care.

6

The court also directed the parties to meet before the next hearing to allow Mother to explain her housing situation, identify any governmental assistance she was receiving, explain the pending lawsuits, and detail any mental health treatment she was receiving.

(8) As of the September 8, 2023 review hearing, Mother had completed a parenting class. However, Mother had: (i) not maintained consistent contact with DFS, (ii) failed to show for two scheduled team meetings, (iii) terminated the services of the family interventionist, (iv) failed to visit with Cameron since July, (v) not shown DFS proof of employment, and (vi) been unsuccessfully discharged from mental health services for her failure to engage. Dr. Brandenburg's evaluation stated that Mother lacks insight and has poor control over her emotions, impairing her ability to parent. Dr. Brandenburg opined that Mother's mental health needs included medication and that the Boys could not be safely returned to Mother, who was imputing nefarious motives to the social workers' efforts to help reunite the family. DFS did not know where Mother was living. Benjamin was doing well in the foster home; he had written a respectful note to Mother to explain why he did not wish to visit with her, but DFS had been unable to give the note to Mother because she had failed to show at the team meetings. Cameron suffered from some developmental delays but was otherwise also doing well. The foster family facilitated visits between the Boys and Jeremy as well as other biological relatives.

7

(9) On December 13, 2023, the Family Court held another review hearing via Zoom. DFS had not had any contact with Mother until the previous day when she contacted DFS for a link to the hearing. DFS did not have a current phone number for Mother and was unaware of any progress Mother had made on her case plan. The Boys were doing well their foster home, which was an adoptive resource for them.

(10) On January 16, 2024, DFS filed a motion to change the permanency plan from reunification to termination of parental rights (TPR) for the purpose of adoption. Shortly thereafter, DFS filed a TPR petition on the grounds that Mother had failed to plan adequately for the Boys' physical needs or mental and emotional health and development. On January 25, 2024, a little over one year after the Boys came into DFS's custody, the Family Court held a permanency hearing. Mother had not had any contact with DFS. Mother admitted that she had not engaged in the recommended mental health treatment and that she would refuse to take any prescribed medication. The Boys were flourishing in foster care and continued to enjoy visits with their older brother and other relatives. At the conclusion of the hearing, the Family Court granted DFS's motion to change the permanency goal and scheduled a TPR hearing for April 29, 2024.

(11) On March 18, 2024, the Family Court conducted a child interview of Benjamin, then twelve years old. Benjamin told the court that he wanted his foster

8

parents to be his parents and that his biological parents are "bad examples." Benjamin also told the court that he did not wish to have any further contact with Mother.

(12) The Family Court held a TPR hearing on April 29, 2024 and June 27, 2024. At the hearing, the Family Court heard testimony from Benjamin's father, Mother, Mother's treatment worker, the Boys' permanency worker, and the Boys' foster mother. The evidence fairly established that Mother had not completed her case plan: (i) she had not provided an address to DFS for a home inspection; (ii) she had not provided DFS with any proof of income; (iii) she admitted that she did not want to work with the DFS caseworkers, whom she characterized as "nasty" and unwilling to help her; (iv) she had refused to work with the family interventionist to implement effective parenting strategies; and (v) she had not followed up with any mental health treatment recommendations. Importantly, Mother disputed Cameron's autism diagnosis, had not seen Cameron on a consistent basis since he entered DFS's custody, and had not seen Benjamin since September 2022. Finally, the Boys were thriving in the care of their foster family, which was an adoptive resource: Cameron had made significant developmental strides with his speech and Benjamin had blossomed into an outgoing honor roll student. Following the hearing, the Family Court issued a written decision terminating Mother's parental rights in the Boys on the basis of her failure to plan. This appeal followed.

9

(13) On appeal, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[4] We review legal rulings *de novo*.[5] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly erroneous.[6] If the trial judge has correctly applied the law, then our standard of review is abuse of discretion.[7] On issues of witness credibility, we will not substitute our judgment for that of the trier of fact.[8]

(14) The statutory framework under which the Family Court may terminate parental rights requires two separate inquiries.[9] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[10] When the statutory basis for termination is failure to plan, the Family Court must also find proof of at least one additional statutory condition.[11] If the Family Court finds a statutory basis for termination of parental rights, the court must then determine whether, under 13 *Del. C.* § 722, severing parental rights is in the child's

---

[4] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439-40 (Del. 2010).
[5] *Id.* at 440.
[6] *Id.*
[7] *Id.*
[8] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).
[9] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).
[10] *Id.* at 537.
[11] 13 *Del. C.* § 1103(a)(5)(a)-(e) (listing additional conditions).

best interest.[12] Both of these requirements must be established by clear and convincing evidence.[13]

(15) Here, the Family Court found that DFS had proved, by clear and convincing evidence, that the termination of Mother's parental rights was appropriate based on her failure to plan adequately for the Boys' physical needs or mental and emotional health and development[14] and that the Boys had been in DFS custody for more than one year.[15] The Family Court then examined the best-interests factors set out in 13 *Del. C.* § 722 and—giving significant weight to factor 5 (the mental and physical health of the individuals involved)—found, by clear and convincing evidence, that termination of Mother's parental rights was in the Boys' best interest.

(16) Mother has submitted a lengthy, somewhat disjointed narrative for the Court's consideration that we construe as an argument that severing her parental rights was not in the Boys' best interest. We disagree and affirm the Family Court's judgment for the reasons cited in its July 8, 2024 order terminating Mother's rights in the Boys.

---

[12] *Shepherd*, 752 A.2d at 536-37.

[13] *Powell v. Dep't of Servs. for Children, Youth and Their Families*, 963 A.2d 724, 731 (Del. 2008).

[14] 13 *Del. C.* § 1103(a)(5).

[15] *Id.* § 1103(a)(5)(a).

(17) Having carefully reviewed the parties' positions and the record on appeal, we find that the Family Court's factual findings are supported by the record, and we can discern no error in the court's application of the law to the facts. We therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issues. We are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. Counsel's motion to withdraw is moot.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

12